NIANTIC MILLS CO. *vs.* RIVERSIDE & OSWEGO MILLS *et als.*

Pub. Laws R. I. cap. 631, of April 20, 1887, as amended by Pub. Laws R. I. cap. 820, of July 30, 1889, of proceedings in insolvency, provide that where a claim against an insolvent debtor is disallowed by his assignee the claimant shall "bring suit against such assignee to test the validity of such claim;"

*Held,* that by "suit" the statute contemplated proceedings in equity and not an action at law, the method of procedure in common law actions not being adapted to the case in view of the results to be reached.

A preliminary recital in an agreed statement of facts in a petition for a new trial that an action at law was duly brought in accordance with a statute, when not intended as an admission of the validity of the suit, will not estop the defendant from objecting to the action as not being warranted by the statute, nor will long delay in objecting to the action by plea or otherwise be deemed a waiver of the right to object where the case is one which the court cannot deal with in that proceeding.

DEFENDANT'S petition for a new trial.

This was an action of *assumpsit* brought against the Riverside and Oswego Mills, an insolvent corporation, and its assignees, to test the validity of a claim which had been rejected by the assignees.

Pub. Laws R. I. cap. 631, §§ 1, 2, 3, of April 20, 1887, entitled "An act in amendment of and in addition to chapter 237 of the Public Statutes, 'of proceedings in insolvency,'" as amended by Pub. Stat. cap. 820, of July 30, 1889, are as follows:

SECTION 1.   The assignee of any insolvent debtor, who has made an assignment of his estate for the benefit of his creditors, shall within ten (10) days from the date of said assignment, send a written or printed notice of said assignment to every creditor of said insolvent debtor of which the said assignee shall have any record or knowledge; and shall publish a notice of said assignment in some one of the principal newspapers published in the town or city in which said insolvent debtor was doing business at the time said assignment was made; and if there be no newspaper published in said town or city, then said notice of assignment shall be advertised in some one of the principal newspapers published in the county where the said debtor resides or has his principal place of business or any property.

SEC. 2. All persons having claims or accounts against the said insolvent debtor shall present the said claims or accounts to the said assignee within six months from the date of the published notice of said assignment, and all claims or accounts not presented to said assignee within said period of six months shall not after that time be a claim against said assignee : *Provided,* That any time before the said assignee shall have paid a dividend or made payment to any creditor in settlement or liquidation of said assigned estate, any such creditor may prove his claim and share in any dividend.

SEC. 3. If said assignee disallows any claim or account so presented to him, he shall give notice in writing to the person or persons having such claim or account that he has disallowed the same ; and such person or persons shall within sixty days from the receipt of such notice, bring suit against said assignee to test the validity of such claim or be forever barred from any participation in said assigned estate.

*March* 21, 1895. STINESS, J. The first group of exceptions, relating to the form of action, raises the question whether an action at law can be brought against an assignee for the benefit of creditors, to test the validity of a claim which he has disallowed. Pub. Laws R. I. cap. 631 and cap. 820, provide that a person having a claim against an insolvent debtor shall present it to the assignee, and if he disallows it, the claimant shall, within sixty days from notice, bring suit to test the validity of the claim, or be barred from any participation in the assigned estate. It is urged by the defendants, in support of their exceptions, that the remedy thus given is in equity and not at law and that no verdict or judgment can be rendered against the assignees, because they have made no promise. The purpose of the statute is plain. It is to aid assignees, by enabling them to reduce to a certainty the claims for which they may be liable, and by compelling speedy proof of a doubtful claim. Before the statute an assignee could have been seriously hindered in the execution of his trust. He had no means of determining the validity of a claim, and he could not compel a claimant to establish it. He had, therefore, either to distribute to one

who might not be entitled or to refuse to do so at his peril. But the court had given relief in equity, to a limited extent, in cases like this; e. g., upon a bill by the assignee for instructions, *Allen* v. *Gardiner*, 7 R. I. 22 ; and upon a bill by creditors to establish a lien on funds in the hands of the assignee, *Smith* v. *Millett*, 12 R. I. 59. Then came the statute to require that speedy steps be taken to establish disputed claims. The assignee is to give notice that he disallows a claim and within sixty days the claimant is to bring *suit* against the assignee to test the validity of his claim. Here we are met with the question : What sort of a suit does this mean? The respondents urge that it must mean a suit in equity, because that is the usual and technical designation of a proceeding in equity, as *action* is at law. While this is the common use of the terms we do not think the words *suit* and *action* are used with such exactness in the statutes as to warrant the conclusion that they are only to be taken in this limited sense. Indeed, they are often used in application to both classes of cases, and we so find them in our statutes, Pub. Stat. R. I. cap. 204, § 1, cap. 207, § 33. We have already held that under this statute it is proper to bring a suit in equity ; because it seeks to enforce a trust, which is a primary object of equity jurisdiction ; *Osborn* v. *Colwell*, 17 R. I. 196 ; *Peabody* v. *Tenney*, 18 R. I. 498. We did not say, for we did not need to say, that an action at law could not be brought. In *Stone* v. *Corcoran*, 17 R. I. 759, the provision that no *action* shall be brought against an executor or administrator within one year after his appointment was held to mean an action at law ; because, clearly, it could not have been intended to grant immunity for a year from injunction or other proceedings in equity. These decisions were not based upon an inherent meaning of the words used in the statutes, but because of the propriety of the remedy in one case and the evident purpose of the statute in the other. The question before us must be solved in the same way. The word suit is the more general term and is broad enough to cover either form of proceeding ; but not so the provisions of the statute. There is no provision for a merely declaratory

judgment for the amount due; or judgment against assets merely. At law, it must be a personal judgment against the assignee for which he must be personally liable; or else the court must either legislate into the statute something by implication which is not there, or vary the common form of judgment so as to make it amount only to a declaratory decree in equity. Under a judgment at law, execution would run against the assignee individually, or if the court should change it to run against the trust estate, if this could be done, still it could then be levied upon the estate for its full amount and in advance of a dividend. In short, if the statute contemplated an action at law, since it could not mean to make the assignee personally liable, the court must depart from its form of judgment and execution, and work out a method of procedure against him as trustee, which, if it could be done, would be utterly foreign to the established practice at law, and would, after all, amount only to a decree in equity to enforce the trust. We cannot think that the proceeding at law was contemplated. The machinery of the law court is not adapted to the result to be reached, and none is provided. On the other hand the procedure in equity is exactly fitted to such a case; it had been so used before; the subject matter is within a recognized branch of equity jurisdiction, and so we think the suit in equity must have been the one intended by the statute.

It is claimed, however, that the defendants are estopped from objecting to the form of action, because they have neither pleaded nor objected to it for the four years during which the case has been in court, and because it is said in the agreed statement of facts that suit was duly brought in accordance with the statute on the disallowed claim. There is no estoppel by the agreement. The statement is contained in a preliminary recital and not in the facts agreed. It was evidently not intended to be an admission of the validity of the suit, for this was the first question at the trial, upon the reading of the agreed statement of facts. Where there has been long delay in objecting to an irregularity, and the case is in such a condition that the court can proceed with it prop-

erly, the irregularity will be deemed to have been waived and the case will go on. But that rule cannot be applied to this case, for here the whole trouble is in going on. We do not see how to do it and hence we are constrained to hold that the first two requests of the defendants should have been allowed. As this disposes of the case it is not necessary to discuss the other questions raised.

New trial granted.

*Hollis R. Bailey, Hartley F. Atwood & J. Jerome Hahn,* for plaintiff.

*John C. Combs & Robert W. Burbank,* for defendants.